CLERKS OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED
APR 3 2020
JULIA C. DUDLEY, CLERK
BY: s/ MARTHA L. HUPP
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

**Elizabeth Jones, as Administrator of the Estate of Juan Markee Jones, deceased,**

    **Plaintiff,**

v.

**City of Danville, Officers Christopher S. Simpkins, and David J. Branch, in their official and individual capacities,**

    **Defendants.**

CASE NO.: 4:20CV00020

## COMPLAINT

Plaintiff, Elizabeth Jones, as Administrator of the Estate of Juan Markee Jones, deceased (hereinafter "Jones"), complains and requests relief against the City of Danville, Officers Christopher S. Simpkins and David J. Branch and in support thereof avers as follows:

### PRELIMINARY STATEMENT

1. As memorialized by the popular television show *The Wire*, police officers can justify the unconstitutional use of force on an unarmed man so long as they claim to fear for their own safety:

> Lt. Daniels: I've got a 14-year-old in critical but stable condition at University and two witnesses who say one of you princes cold-cocked him with the butt-end of a pistol.
> Ofc. Hauk: No sir.
> Daniels: I've got his mother over at IID filing a formal brutality charge......IID is going to be on all three of you by afternoon, and if you don't get a story straight by then you are going to have a file thick enough to see the light of a trial board. Now tell me, who cold-cocked the kid?
> Ofc. Pryzbylewski: Me.
> Daniels: Why?
> Pryzbylewski: He pissed me off.

1

> Daniels: No Officer Pryzbylewski, he did not piss you off. **He made you fear for your safety and that of your fellow officers.** I'm guessing now, but maybe he was seen to pick up a bottle and menace officers Hauk and Carver both of whom had already sustained injury from flying projectiles. Rather than use deadly force in such a situation, maybe you elected to approach the youth ordering him to drop the bottle. **Maybe when he raised the bottle in a threatening manner**, you used a Kel-Lite, not the handle of your service weapon to incapacitate the suspect. **Go practice**.

THE WIRE, S1, E2, *The Detail*, 49:47-51:48 (internal quotations omitted)(emphasis added).

2. In *Tennessee v. Garner*, 471 U.S. 1 (1985), the United States Supreme Court found that a police officer may not shoot an unarmed fleeing suspect in the back without violating the United States Constitution.

3. Since the United States Supreme Court's pronouncements in *Tennessee v. Gardner* and the companion decision of *Graham v. Connor*, 490 U.S. 386 (1989), all police officers had to do to justify unconstitutional use of force on unarmed citizens was to proclaim that they feared for their safety.

4. Any police officer can indiscriminately use deadly force on an unarmed person so long as they know enough to offer the ubiquitous defense that they "feared for their safety."

5. To avoid any type of reprimand after shooting unarmed people in the back, like in *Tennessee v. Garner*, police officers need only claim that the suspect responded to them in a "threatening manner."

6. While there often no professional consequences for officers who engage in unconstitutional actions, the only remedy for citizens and their heirs are lawsuits like this one.

7. The sad consequence is the evaporation of rights guaranteed by the United States Constitution.

8. Law enforcement's understanding on how to circumvent the Constitution and scrutiny of their misdeeds is so obvious it is memorialized in a critically acclaimed fictional television show, *The Wire*.

9. The events of April 8, 2018 in Danville, Virginia present such a case.

10. But those events were not fiction.

11. They were real and had deadly consequences for an unarmed man.

12. In the early morning, officers from the Danville Police Department went to arrest Juan Jones in response to a 911 call.

13. Jones tried to flee from the officers by driving to a nearby wooded area.

14. He came to a stop and exited the vehicle.

15. Danville Police officers tried to subdue him with a Taser.

16. The officers then shot Jones, discharging their weapons five times, striking Jones once in the back and once in the chest.

17. Though the officers shot the unarmed Jones in the back, to no one's surprise, they claimed they shot him in the back when he turned towards the officers in a "threatening" manner.

18. Predictably, the Commonwealth's Attorney investigating this tragedy found nothing wrong with the officers' conduct.

19. In fact, he commended their by-the-book actions and closed his investigation.

20. Presumably, the textbook available to Danville police officers and the Commonwealth's Attorney omits any reference to the dictates of *Tennessee v Gardner*.

21. Had the officers followed the law and heeded the Supreme Court's holding in *Tennessee v Gardner*, Jones would be alive.

22. The Commonwealth's Attorney, however, did not attempt to reconcile the contradiction between the officers' claim that Jones turned toward them in a "threatening manner" and the fact that they shot him in the back.

23. While Juan Jones deserved to be arrested, he did not deserve to be shot to death.

24. In the United States of America, a criminal suspect is still entitled to a hearing.

25. But the City of Danville did not afford Juan Jones a hearing.

26. Defendants' callous disregard for the rights of an unarmed man violates his substantive and procedural due process rights guaranteed by the Constitution, and as remediable pursuant to 42 U.S.C. §1983.

27. The Defendants' actions were so egregious as to shock the conscience and were committed in conscious disregard of the substantial and/or unjustifiable risk of causing harm to Juan Jones.

28. Plaintiff, Elizabeth Jones, as Administrator of the Estate of Juan Markee Jones, deceased, seeks damages from the Defendants and their agents/employees pursuant to 42 U.S.C. § 1983 for their disregard of Jones' health, welfare, and safety guaranteed by the United States Constitution.

29. The instant action is brought against all Defendants identified herein for committing acts under color of law which deprived Juan Jones of rights secured under the Constitution and laws of the United States and the Constitution and laws of the Commonwealth of Virginia.

## STATEMENT OF JURISDICTION

30. The Court has federal subject matter jurisdiction in this action pursuant to 28 U.S.C. § 1331 because Plaintiff's claims under 42 U.S.C. § 1983 arise under the laws of the United States.

31. Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's additional claims under state law because Plaintiff's state law claims relate to Plaintiff's federal law claims, arise out of a common nucleus of operative facts, and form part of the same case

32. Venue is proper in the Danville Division of the Western District of Virginia because Plaintiff's claims arise primarily from unlawful conduct occurring Danville, Virginia.

## PARTIES

33. Plaintiff, Elizabeth Jones, is an adult individual residing at 116 Fuller Street, Danville, VA 24540.

34. Plaintiff is the mother of Plaintiff's decedent, Juan Markee Jones.

35. Juan Jones died on April 8, 2018.

36. On June 7, 2018, the Danville Circuit Court appointed Elizabeth Jones Administrator of the Estate of Juan Markee Jones under Va. Code § 8.01-50. *See* Exhibit "A." as such, Ms. Jones has standing to bring the instant action on behalf of the Estate of Juan Markee Jones.

37. Defendant City of Danville is a local governing body located at the Municipal Building, 427 Patton Street, Danville, Virginia.

38. The Danville Police Department is a law enforcement arm of the City of Danville, Virginia.

39. Defendant City of Danville operates, manages, controls, and/or is otherwise responsible for the Danville Police Department, including the employment, supervision, and retention of its police officers, including Christopher S. Simpkins and David J. Branch.

40. Defendant City of Danville fully funds and maintains the Danville Police Department which operates under and administers a set of law enforcement policies, practices, and customs involving the hiring, training, supervision, retention, and termination of its officers, employees, agents, servants, and ostensible agents, including but not limited to Officers Christopher S. Simpkins and David J. Branch.

41. Defendant City of Danville is responsible for the officers involved in the interaction with Juan Jones on April 8, 2018, including the employment, supervision, and retention of Officers Christopher S. Simpkins and David J. Branch.

42. Defendants, Christopher S. Simpkins and David J. Branch were at all times relevant to this complaint, duly appointed and acting as officers of the Danville Police Department acting under the color of law and under the statutes, ordinances, regulations, policies, customs and usages of the Commonwealth of Virginia, City of Danville.

43. Plaintiff brings suit against Christopher S. Simpkins and David J. Branch in their individual and official capacities.

44. At all times relevant hereto, Defendants, Christopher S. Simpkins and David J. Branch were acting within the course and scope of their employment with the Danville Police Department.

45. At all times relevant hereto, the unconstitutional acts of Christopher S. Simpkins and David J. Branch were the result of the policies, practices, customs, and/or procedures of the Danville Police Department and were implemented, overseen, approved, ratified, and/or controlled by the principals of the City of Danville and the Danville Police Department.

46. Defendant City of Danville's policies, practices, and customs include training in the use of lethal force, on-the-street encounters with civilians, TASER training, firearm training, community policing, defensive tactics and officer survival.

47. Through Defendant City of Danville, the police department created, implemented, drafted, revised, ratified and/or approved these policies, procedures, practices, and protocols include written directives.

48. Defendant City of Danville being sued individually for their own tortious acts and the acts and/or omissions of its agents and employees under the theory of respondeat superior.

## FACTS

49. On April 8, 2018, Juan Jones' girlfriend placed a 911 call claiming that he had assaulted her.

50. The Danville Police Department responded to the call and approached Juan Jones in his vehicle.

51. Juan Jones drove off and Officers Simpkins and Branch pursued him.

52. Juan Jones then drove his vehicle to a wooded area and stopped.

53. Officers Simpkins and Branch instructed Jones to get out of the vehicle.

54. He did so.

55. They then tried to shoot him with a Taser.

56. The officers then discharged their guns at him, striking Jones in his back and chest, killing him.

57. Jones was unarmed.

58. Jones was an African-American male.

59. Assistant Chief Medical Examiner Sara Ohanessian, M.D. performed an autopsy of Juan Jones with a representative of the Virginia State Police present.

60. Dr. Ohanessian determined that the Danville officers shot Jones in the back.

61. Dr. Ohanessian found:

> Indeterminate range penetrating gunshot wound of the chest. Centered at the left upper aspect of the back, 11 ½" from the top of the head and 6½" left of the midline is a round ½" diameter gunshot entrance wound with a 1/16" rim of abrasion. There is no stippling or soot deposition on the surface of the skin. The bullet makes a hemorrhagic wound tract through the subcutaneous tissue, fractures the left scapula, left posterior third rib, left lateral second rib and left anterior first rib transects the left subclavian artery and vein and deposits within the soft tissue and musculature of the left anterior chest wall where a deformed medium-caliber copper-jacketed bullet along with three lead fragments and one copper jacket fragment are recovered. Associated injury includes of 500 cc of blood within the left pleural cavity. The direction of wounding is back to front and left to right with no significant up-down deviation with the body in standard anatomic position.

62. Dr. Ohanessian drew a diagram showing the gunshot wound entrance on Jones' back:



63. Though the officers also shot Jones in the back, Dr. Ohanessian, lists the cause of death as "GUNSHOT WOUNDS OF CHEST."

64. The Commonwealth's Attorney assigned to review the killing of Juan Jones determined that the officers did nothing wrong.

65. The Commonwealth's Attorney was untroubled by Officers Simpkins and Branch shooting an unarmed man in the back.

## COUNT I
## DEPRIVATION OF CIVIL RIGHTS – 42 U.S.C. § 1983
## PLAINTIFF V. ALL DEFENDANTS

66. Plaintiff incorporates by reference each and every allegation set forth above.

67. For the reasons set forth herein, Plaintiff alleges that Defendants, intentionally, willfully, recklessly, and/or otherwise deprived Juan Jones of his civil rights in violation of the United States Constitution and actionable under 42 U.S.C. § 1983.

68. The unconstitutional actions of Defendants include but are not limited to the use of excessive and/or unreasonable force through a lethal shooting of an unarmed man with without affording him due process of law.

69. As a direct result of the unlawful and unreasonable constitutional violations committed by Defendants, Juan Jones was subjected to the ultimate deprivation of his civil liberties, his loss of life.

70. As a direct result of Defendants' unlawful and unreasonable constitutional violations, Juan Jones suffered conscious pain and suffering, fear of impending doom and death.

71. Plaintiff demands all damages recoverable under Section 1983, including damages for funeral and medical expenses, conscious pain and suffering, loss of earnings and lost earnings capacity, as well as any other damages recoverable.

WHEREFORE, Plaintiff demands judgment against Defendants, jointly and severally, in the full and fair amount in compensatory and punitive damages, plus attorney's fees, interest and costs.

## COUNT II
## SURVIVAL ACTION
## PLAINTIFF V. ALL DEFENDANTS

72. Plaintiff incorporates by reference herein each and every allegation set forth above.

73. Pursuant to Virginia Code § 8.01-25, Plaintiff's decedent, Juan Jones' right of action and the claims against the Defendants named herein survives in favor of Elizabeth Jones, the legal representative of the deceased.

74. Plaintiff demands all damages recoverable under the Act, including damages for funeral and medical expenses and conscious pain and suffering, as well as any other damages recoverable under the Act.

WHEREFORE, Plaintiff demands judgment against Defendants, jointly and severally, in the full and fair amount in compensatory and punitive damages, plus attorney's fees, interest and costs.

## COUNT III
## WRONGFUL DEATH
## PLAINTIFF V. ALL DEFENDANTS

75. Plaintiff incorporates by reference herein each and every allegation set forth above.

76. Pursuant to Virginia Code § 8.01-25, Plaintiff's claims are also actionable under the Virginia Wrongful Death Act.

77. As a direct, substantial, and proximate result of the tortious acts and/or omissions of Defendants and/or the employees, agents, representatives, who were acting during the course and within the scope of their employment, the Plaintiff expended sums of money for medical, hospital and/or funeral expenses to their great financial loss and detriment.

78. As a direct, substantial, and proximate result of the tortious acts and/or omissions of Defendants and/or the employees, agents, representatives, who were acting during the course and within the scope of their employment, Plaintiff has suffered sorrow, mental anguish, and solace, including a loss of society, companionship, comfort, guidance and support and has been deprived of Juan Jones' financial support, the pecuniary value of his services, protection, care and assistance, and will continue to be deprived of decedent's support, earnings and services in the future, all to its great financial loss and detriment.

79. Plaintiff hereby demands all damages recoverable under the Wrongful Death Statute.

WHEREFORE, Plaintiff demands judgment against Defendants, jointly and severally, in the full and fair amount in compensatory and punitive damages, plus attorney's fees, interest and costs.

### COUNT IV
### EXCESSIVE FORCE/POLICE BRUTALITY
### PLAINTIFF V. ALL DEFENDANTS

80. Plaintiff incorporates by reference each and every allegation set forth above.

81. At all times relevant hereto, Defendants had an obligation to employ only reasonable measures in their interaction and treatment of Juan Jones.

82. Notwithstanding the obligations, Defendants used excessive, unreasonable, and lethal force on Plaintiff's decedent, Juan Jones.

83. It is believed, and therefore averred, that the use of force was not warranted or authorized under the circumstances.

84. Defendants, City of Danville and Officers Simpkins and Branch, acting under the color of law, approved, condoned, and/or ratified the actions of police and law enforcement

officers, therefore, any and all liability on the part of any of the police and law enforcement officers is imputed to them.

85. As a direct, substantial and proximate result of the intentional, willful, malicious and/or otherwise tortious conduct of Defendants, Plaintiff's decedent, Juan Jones suffered serious and permanent injuries that resulted in his death.

86. As a direct, substantial and proximate result of the intentional, willful, malicious and/or otherwise tortious conduct of Defendants, Juan Jones was deprived of his civil rights under the United States Constitution.

WHEREFORE, Plaintiff demands judgment against Defendants, jointly and severally, in the full and fair amount in compensatory and punitive damages, plus attorney's fees, interest and costs.

## COUNT V
## NEGLIGENT TRAINING, SUPERVISION, AND RETENTION UNCONSTIUTIONAL/INADEQUATE POLICIES, TRAINING, AND PROCEDURES - 42 U.S.C. § 1983 PLAINTIFF V. DEFENDANT CITY OF DANVILLE

87. Plaintiff incorporates by reference each and every allegation set forth above.

88. At all times relevant herein, the Danville Police Department and its officers were acting under the direction and control, and pursuant to the official rules, regulations, policies and procedures of Defendant City of Danville.

89. Defendant City of Danville acted recklessly and with deliberate indifference to the safety of the public at large, including Plaintiff's decedent, Juan Jones, by failing to properly train, supervise, control, direct, and monitor their police and law enforcement officers.

90. Specifically, Officers Simpkins and Branch's use of lethal force on Juan Jones violated the dictates of the United States Supreme Court in *Tennessee v. Garner*.

91. Defendants acted under the color of official policies, regulations, ordinances, policies and/or procedures which caused Defendant City of Danville and Officers Simpkins and Branch to violate Juan Jones' civil rights.

92. The enforcement of the official policies by Defendant City of Danville caused the deprivation of Juan Jones' civil rights.

93. Following the death of Juan Jones, it is unknown whether Defendants altered, changed, amended, and/or modified the training administered to the Danville Police Department to conform, comply or adhere to the constitutional dictates of the United States Supreme Court in *Tennessee v. Garner*.

94. Defendant City of Danville knew or should have known that its police officers had known propensities for engaging in the unreasonable and unconstitutional police conduct and using inappropriate and/or excessive force during the course of police work.

95. Defendant City of Danville ratified the unconstitutional conduct of Danville police officers.

96. As a direct, substantial and proximate result of the reckless, willful, malicious and/or otherwise tortious conduct of Defendant City of Danville, Plaintiff's decedent, Juan Jones was wrongfully and unlawfully shot to death on April 8, 2018.

97. As a direct, substantial and proximate result of the reckless, willful, malicious and/or otherwise tortious conduct of Defendant City of Danville Plaintiff's decedent, Juan Jones was wrongfully and unlawfully deprived of his civil rights which were afforded to him under the United States Constitution resulting in his death.

WHEREFORE, Plaintiff demands judgment against Defendants, jointly and severally, in the full and fair amount in compensatory and punitive damages, plus attorney's fees, interest and costs.

## COUNT VI
## VIOLATION OF THE VIRGINIA CONSTITUTION
## PLAINTIFF V. ALL DEFENDANTS

98. Plaintiff incorporates by reference each and every allegation set forth above.

99. The acts of Defendants violated the Constitution of the Commonwealth of Virginia, including Article 1 which gave Juan Jones the right to due process of law before being deprived of his life and liberty, and a right not to be subjected to an unlawful arrest, unlawful seizure, or excessive force.

100. Defendant City of Danville is liable on the basis of respondeat superior for any violations of the Constitution of the Commonwealth of Virginia that deprived Juan Jones of his civil rights contained with the Constitution of the Commonwealth of Virginia.

WHEREFORE, Plaintiff demands judgment against Defendants, jointly and severally, in the full and fair amount in compensatory and punitive damages, plus attorney's fees, interest and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that:

1. This Court grant Plaintiff compensatory damages.
2. This Court grant Plaintiff nominal damages.
3. This Court grant Plaintiff punitive damages.
4. This Court award Plaintiff attorney's fees, costs, and expenses related to this action.
5. This Court grant injunctive relief to correct government procedure to prevent future injury.

6. This Court award Plaintiff all such other relief as the Court deems just.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby requests a jury trial.

Respectfully submitted,

By: /s/ *Thomas N. Sweeney*
MESSA & ASSOCIATES, P.C.
123 S. 22nd Street
Philadelphia, PA 19103
(215) 568-3500
Attorneys for Plaintiff

Dated: April 3, 2020