IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | |
|---|---|
| ELIZABETH JONES, ) | |
|     Plaintiff, ) | |
| ) | Case No. 4:20-CV-20 |
| v. ) | |
| ) | |
| CITY OF DANVILLE, et al., ) | By:    Michael F. Urbanski |
|     Defendants. ) | Chief United States District Judge |

### MEMORANDUM OPINION

This matter is before the court on defendants City of Danville ("City") and Officer Christopher S. Simpkins and Officer David J. Branch's (collectively, "Officers") motion to bifurcate. Mot. to Bifurcate, ECF No. 31. Citing the need to avoid onerous discovery relevant to plaintiff's Monell[1] claims against the City and the potential prejudice to the Officers from introduction of evidence at trial unrelated to them, defendants seek to bifurcate the trial of the individual civil rights claims against the Officers from the Monell claims against the City. For the reasons stated herein, the court will **GRANT** defendants' motion.

### I.

In this case, plaintiff alleges the unconstitutional use of force by two City of Danville police officers resulting in the shooting death of Juan Markee Jones ("Jones"). The complaint contains the following allegations. On April 8, 2018, Jones's girlfriend called 911 to report that Jones assaulted her. Compl., ECF No. 1, at ¶ 49. The responding Officers approached Jones,

---

[1] In Monell v. Dept. of Soc. Servs. of the City of New York, 436 U.S. 658, 694 (1978), the Supreme Court held that municipalities may be liable for constitutional violations "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury."

1

then located in his vehicle. Id. at ¶ 50. Jones fled from the pursuing Officers, driving to a wooded area. Id. at ¶ 51. After stopping, Jones complied with the Officers' instruction to exit the vehicle. Id. at ¶ 53-54. After they "[t]ried to shoot him with a Taser, [t]he officers then discharged their guns at him, striking Jones in his back and chest, killing him." Id. at ¶ 55-56. The complaint alleges that Jones, an African American male, was unarmed. Id. at ¶¶ 57-58.

On April 3, 2020, plaintiff Elizabeth Jones, Administrator of Jones's Estate, filed a six-count complaint alleging a deprivation of civil rights in violation of 42 U.S.C. § 1983 against all defendants (Count I); survival action against all defendants (Count II); wrongful death against all defendants (Count III); excessive force and police brutality against all defendants (Count IV); negligent training, supervision, and retention and inadequate policies, training, and procedures in violation of 42 U.S.C. § 1983 against the City (Count V); and violation of the Virginia Constitution against all defendants (Count VI). ECF No. 1 at 9-14.

Defendants move to bifurcate the trial and stay discovery as to the Monell claims against the City until after the § 1983 claims against the Officers are resolved. Mot. to Bifurcate, ECF No. 31. Defendants assert that in the interests of preventing intrusive and time-consuming discovery against the City and avoiding prejudice, plaintiff should proceed first against the Officers as the Monell claims against the City are wholly dependent on a finding of individual § 1983 liability against the Officers. Br. in Supp. of Mot. to Bifurcate, ECF No. 32 at 3-5. Plaintiff contends that bifurcation is premature, discovery on these issues is intertwined, and defendants do not provide any specific facts warranting bifurcation. Pl.'s Mem. in Opp'n to Mot. to Bifurcate, ECF 38 at 2-4.

2

## II.

Federal Rule of Civil Procedure 42(b) governs bifurcation. Rule 42(b) states: "For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." Fed. R. Civ. P. 42(b). Courts may also bifurcate a trial to avoid confusion or to serve the ends of justice. U.S. ex rel. Miller v. Bill Harbert Intern. Const., Inc., Civ. Action No. 95-1231 (RCL), 2007 WL 851823, at *1 (D.D.C. Mar. 14, 2007). Because Rule 42(b) is disjunctive, "[o]nly one of these criteria need be met to justify bifurcation." Saxion v. Titan-C-Mfg., 86 F.3d 553, 556 (6th Cir. 1996).

A district court has "broad discretion in deciding whether to bifurcate claims for trial, and the exercise of that discretion will be set aside only if clearly abused." Beasley v. Kelly, Civ. Action No. DKC-10-0049, 2010 WL 3221848, at *3 (D. Md. Aug. 13, 2010) (citing Dixon v. CSX Transp., Inc., 990 F.2d 1440, 1443 (4th Cir.), cert. denied, 510 U.S. 915 (1993)); Brown v. Bailey, Civ. Action No. RDB-11-1901, 2021 WL 2188338, at *4 (D. Md. June 13, 2012); see also 9A Wright and Miller, Fed. Prac. & Proc. § 2388 (3d ed. 2019) ("It is well-established by a wealth of case law that ultimately the question of whether to conduct separate trials under Rule 42(b) should be, and is, a matter left to the sound discretion of the trial court[.]").

## III.

Defendants seek to bifurcate the § 1983 claims against the Officers as individuals from the municipal Monell claims against the City. Under § 1983, a plaintiff may bring suit against anyone who, acting under the color of state law, causes another person to be "depriv[ed] of any rights, privileges, or immunities secured by the Constitution and laws" of the United

States. 42 U.S.C. § 1983; Filarsky v. Delia, 566 U.S. 377, 383 (2012). A § 1983 claim is not a substantive right itself; rather, it provides a means of "vindicating federal rights elsewhere conferred." Albright v. Oliver, 510 U.S. 266, 271 (1994). To prove a § 1983 claim, plaintiff must "show that the alleged constitutional deprivation at issue occurred because of action taken by the defendant 'under color of . . . state law.'" Davison v. Randall, 912 F.3d 666, 679 (4th Cir. 2019) (quoting Philips v. Pitt Cty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009)).

A Monell claim subjects a municipality to suit under § 1983 when an individual state actor engages in an unconstitutional action while carrying out an official policy or custom of the local government. Monell, 436 U.S. at 690-91; Love-Lane v. Martin, 355 F.3d 766, 782 (4th Cir. 2004) ("To hold a municipality (a local government entity) liable for a constitutional violation under § 1983, the plaintiff must show that the execution of a policy or custom of the municipality caused the violation."). Municipal liability only attaches when the municipality causes the constitutional violation. Johnson v. Baltimore Police Dep't, Civ. Action No. ELH-19-698, 2020 WL 6728939, at *4 (D. Md. Nov. 16, 2020) (quoting City of Canton v. Harris, 489 U.S. 378, 385 (1989)) (emphasis omitted); see Holloman v. Markowski, 661 F. App'x 797, 799 (4th Cir. 2016), cert. denied, 137 S. Ct. 1342 (2017). Thus, to prove a Monell claim, plaintiff must show that "(1) the municipality had an unconstitutional policy or custom; and (2) the unconstitutional policy or custom caused a violation of the plaintiff's constitutional rights." Johnson, 2020 WL 6728939, at *4.

Furthermore, the linchpin of a Monell claim is that municipal liability cannot attach unless there was a constitutional violation by an individual government employee. City of Los Angeles v. Heller, 475 U.S. 796, 799 (1996) (stating that Monell liability will not attach where

4

no governmental officer caused a constitutional harm); Anderson v. Caldwell City Sheriff's Office, 524 F. App'x 854, 862 (4th Cir. 2013) ("No actionable claim against supervisors or local governments can exist without a constitutional violation committed by an employee."); Evans v. Chalmers, 703 F.3d 636, 654 (4th Cir. 2012). Therefore, Monell claims often "hinge on [plaintiff's] ability to show that an [individual government employee] violated [plaintiff's] constitutional rights." Dawson v. Prince George's County, 896 F. Supp. 537, 540 (D. Md. 1995); Temkin v. Frederick City Comm'rs, 945 F.2d 716, 724 (4th Cir. 1991), cert. denied, 502 U.S. 1095 (1992).

For this reason, a number of district courts in this circuit, notably from the District of Maryland, have bifurcated Monell claims against municipalities from § 1983 claims against individual defendants. See Beasley, 2010 WL 3221848, at *3; Humbert v. O'Malley, Civ. Action No. WDQ-11-0440, 2012 WL 1066478, at *2 (D. Md. Mar. 12, 2012) (stating that bifurcation is common when plaintiffs allege Monell claims and § 1983 claims against individuals); Gray v. Kern, Civ. Action No. WMN-13-2270, 2014 WL 1344275, at *1-2 (D. Md. Apr. 3, 2014). Nevertheless, bifurcation must be decided on the particular facts of each case. Noel v. Artson, Civ. Action No. WMN-06-2069, 2006 WL 8427663, at *3 (D. Md. Nov. 1, 2006).

Here, plaintiff asserts that bifurcation is premature. ECF No. 38 at 4. In support, plaintiff cites Latson v. Clarke, No. 1:16-cv-39, 2017 WL 3098124 (W.D. Va. July 21, 2017). In Latson, this court denied bifurcation of a statute of limitations issue in an Americans with Disabilities Act and Rehabilitation Act case. Id. at *1, 3. That case is inapposite as the claims in Latson bear no relation to those at issue here. Specifically, Latson does not involve the bifurcation of Monell claims and § 1983 claims against individuals. Plaintiff does not cite to

5

one analogous case in this district or circuit to support her assertion. Plaintiff also argues that bifurcation is premature because these issues are likely to be addressed in connection with defense motions for summary judgment and qualified immunity. ECF No. 38 at 4. However, defendants' ability to file summary judgment motions does not eliminate the burden posed by broad discovery requests directed to the Monell issue.

Additionally, plaintiff states defendants' reliance on cases from Maryland is not persuasive. Id. at 3. The court disagrees. Defendants cite to Beasley and Marryshow v. Bladensburg, 139 F.R.D. 318 (D. Md. 1991), to support the notion that district courts in this circuit have bifurcated Monell claims. ECF No. 32 at 5. But plaintiff rightly notes that the Beasley bifurcation motion went unopposed. See Beasley, 2010 WL 3221848, at *3. And plaintiff contends Marryshow is inapplicable to the present case because there, the court bifurcated claims due to allegations of generic fears about police brutality throughout the county. See Marryshow, 139 F.R.D. at 320. That court said those generalized assertions would not be admissible at trial. Id. Although plaintiff distinguishes this case from Beasley and Marryshow, plaintiff offers nothing to cast doubt on the series of rulings favoring bifurcation in these cases. See, e.g., Peprah v. Williams, Civ. Action No. GLR-18-990, 2019 WL 224245, at *10 (D. Md. Jan. 15, 2019); Peterson v. Prince George's County, Civ. Action No. PWG-16-1947, 2017 WL 2666109, at *4 (D. Md. June 21, 2017); James v. Frederick City Pub. Schs., 441 F. Supp. 2d 755, 762 (D. Md. 2006).

Although not cited by plaintiff, a more recent Maryland district court opinion denied without prejudice a bifurcation motion in a § 1983 claim as premature and allowed Monell discovery to proceed. See Johnson, 2020 WL 6728939, at *8. Jerome Johnson spent nearly 30

years in prison after being wrongfully convicted of murder. Johnson brought a § 1983 action against the Baltimore Police Department ("BPD") and four BPD detectives for concealing exculpatory and impeachment evidence during the murder investigation. Johnson also alleged that this concealment was part of a longstanding pattern and practice of the BPD. As here, defendants sought to bifurcate the trial of the § 1983 claims against the individual officers and the Monell claim against the BPD. Defendants also sought to stay discovery on the Monell claim. The district court determined that it was too early in the case to decide whether bifurcation was appropriate yet allowed Monell discovery to proceed given that the issues in the case were already more than 30 years old. While the court's opinion in Johnson is well-reasoned and persuasive, its facts are distinguishable from those present here. First, compared to the decades-old Brady violations in Johnson, the issues in this case are far more recent. Second, there is no suggestion in the Johnson opinion that plaintiff therein had issued expansive discovery requests of the sort present here. Third, unlike in Johnson, because prior episodes of police brutality are relevant to the Monell claims against the City, a joint trial presents real risks of undue prejudice to the Officers from introduction of such evidence unrelated their conduct. Both the scope of the discovery sought in this case and the risk of undue prejudice present here requires a course different from that charted by the court in Johnson.

Plaintiff also contends that defendants do not offer specific facts to support bifurcation of trial or discovery, arguing that defendants do not explain "how Danville's training of its officers regarding the use of deadly force on unarmed citizenry has no bearing on the facts of this case." ECF No. 38 at 3. Plaintiff contends that the City's training and policies are

7

inextricably linked with proving plaintiff's claims and should be discoverable. The court agrees that discovery should be permitted as to the training provided to the Officers on the appropriate use of deadly force, City policies as to use of force, and the Officers' experience in such situations. That evidence is directly relevant to the § 1983 claims against the Officers.

But plaintiff's discovery requests far transcend the issue of the training these Officers received from the City on use of force and their own experience with such incidents. Plaintiff's first production request included "historical information of complaints and suits received by the City of Danville related to civil rights claims, complaints regarding use of TASER, use of firearms, allegations of excessive use of force, and allegations of police brutality." ECF No. 39 at 2. Plaintiff also requested all documents pertaining to the City's use of "TASER's, firearms, [or] service weapons" and arrest records for all "officers related to TASER's and service weapons." Id. The requested information also predates one Officer's employment with the City. Id. Such broad discovery requests far exceed the scope of permissible discovery as to the § 1983 claims against the Officers. Because the Officers must first be found to have engaged in a constitutional violation before a Monell claim can attach to the City, defendants assert that this overreaching discovery is unduly burdensome. The court agrees. Again, discovery is permissible as to the training provided by the City to the Officers on use of force, City policies on use of force, and any prior incidents involving use of force by the Officers.

Beyond the discovery concerns, bifurcation of these issues for trial is appropriate for another reason. As the court noted in Dawson,

> Evidence of the County's custom, practice or policy may include evidence of "prior incidents of police brutality, the nature of such incidents, and the municipal policymakers' reaction to them." [Marryshow, 139 F.R.D.] at 320. While this evidence is most

8

> certainly relevant to Dawson's case against the County, the Court would not likely allow it in Dawson's case against [Officer] Ricker. See Spell v. McDaniel, 824 F.2d 1380, 1390-91 (4th Cir. 1987). The prejudicial effect of such evidence would clearly outweigh its probative value. Fed. R. Evid. [403]. Moreover, under Fed. R. Evid. 404(a), the Court would most likely exclude evidence of Ricker's past conduct aimed at proving his character and propensities.
>
> The conflicts are obvious. The best way to avoid the conflicts resulting in trying the two claims together is to bifurcate them. To avoid prejudice in the trial against Ricker, the Court will allow only relevant evidence, if any, of the County's custom, practice or policy. Should the jury find Ricker, or other police officers involved, innocent, trial against the County would be unnecessary. . . . Thus, to avoid prejudice and, indeed for the sake of economy and expedition, the Court will grant Defendants' motion for bifurcation under Fed. R. Civ. P. 42(b). In light of this conclusion, the Court will also grant Defendants' motion to stay discovery, but only with respect to issues relevant to Dawson's case against the County.

896 F. Supp. at 540; see Humbert, 2012 WL 1066478, at *2 ("To prove the city and police department's deliberate indifference, or a custom or policy of constitutional violations, [plaintiff] may need to submit evidence of prior misconduct by police officers, and the city and police department's response. Such evidence would unduly prejudice [the individual officer defendants.]"); Swagler v. Harford County, Civ. Action No. RDB-08-2289, 2009 WL 3747175, at *1 (D. Md. Nov. 4, 2009). The same is true here. It would be unduly prejudicial to the Officers to introduce at trial prior incidents unrelated to them of the excessive use of force by City police officers. While relevant to the issue of custom and practice on the Monell claims against the City, such evidence would be unduly prejudicial to the individual Officer defendants in the § 1983 case against them.

9

## IV.

For the foregoing reasons, the court **GRANTS** defendants' motion to bifurcate the claims against the Officers from the Monell claims against the City. Discovery regarding plaintiff's claims against the City is **STAYED** to the extent that it does not relate to the claims against the Officers. Discovery is permitted as to the training provided by the City to the Officers on use of force, City policies regarding use of force, and any prior incidents involving use of force by the Officers. An appropriate order will be issued.

Entered: April 22, 2021

Michael F. Urbanski
Chief U.S. District Judge
2021.04.22 13:55:02
-04'00'

Michael F. Urbanski
Chief United States District Judge